**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

ETEGRA, INC. Case No.: 25-24345-EPK
Chapter 11

Debtor. /

**COOVER-CLARK ASSOCIATES, INC.'S OBJECTION TO APPROVAL OF FIRST AMENDED DISCLOSURE STATEMENT AND OBJECTION TO CONFIRMATION OF AMENDED PLAN OF REORGANIZATION**

Coover-Clark Associates, Inc. ("Coover-Clark"), a creditor and party in interest, by and through undersigned counsel, files this Objection to the Debtor's First Amended Disclosure Statement (the "Amended Disclosure Statement") and Amended Plan of Reorganization (the "Amended Plan"), and states:

**INTRODUCTION**

1. The Debtor has filed an Amended Plan of Reorganization and First Amended Disclosure Statement.

2. Although amended, the filings do not cure the fundamental deficiencies contained in the Debtor's prior disclosure and proposed treatment of creditors.

3. Most significantly, the Debtor continues to acknowledge that its joint-venture interests constitute its "primary assets," yet fails to provide creditors with meaningful information concerning the value, revenues, accounts receivable, work in progress, contractual rights, cash, distributions, liabilities, or liquidation value associated with those assets.

4. At the same time, the Amended Plan proposes to pay approximately $16,050,469.48 of general unsecured claims, only $1,000 per month for five years, representing approximately $60,000 in aggregate payments to the entire class.

5. The Amended Plan nevertheless provides for the reorganized Debtor to retain its assets and continue operating after confirmation. It further provides that existing shareholder Aditi Allady will retain her shares and purportedly receive the shares of four other existing shareholders without identifying any consideration for those additional shares.

6. The deficiencies are therefore not limited to inadequate disclosure under 11 U.S.C. § 1125. The Amended Plan itself raises substantial issues under 11 U.S.C. § 1129 concerning, among other things, the best interests of creditors, feasibility, impairment and voting, good faith, fair-and-equitable treatment, the absolute-priority rule, and the purported discharge of nondebtor professionals.

7. Accordingly, the Amended Disclosure Statement should not be approved, and the Amended Plan should not be confirmed in its present form.

## I. THE AMENDED DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION UNDER 11 U.S.C. § 1125

8. Section 1125(a)(1) requires disclosure of information of a kind and in sufficient detail, as far as reasonably practicable in light of the nature and history of the Debtor and the condition of its books and records, that would enable a hypothetical investor typical of the relevant class to make an informed judgment concerning the Plan.

9. The question is not whether the Debtor has supplied creditors with a disclosure document, but whether the information provided is sufficient for creditors to make an informed judgment concerning the Amended Plan.

10. Here, creditors are being asked to evaluate a Plan that proposes a nominal recovery for unsecured creditors while the value of assets expressly characterized by the Debtor as its "primary assets" remains unknown.

11. The Amended Disclosure Statement therefore does not provide the information necessary for an informed vote.

## II. THE DEBTOR STILL FAILS TO PROVIDE ADEQUATE INFORMATION CONCERNING ITS PRIMARY ASSETS

12. The Amended Disclosure Statement expressly states:

> "The Debtor's primary assets are the joint venture agreements operated through various limited liability companies owned by the Debtor."

13. Despite that representation, the Debtor does not provide meaningful financial information concerning those joint-venture interests.

14. The Debtor has identified numerous joint ventures, including Etegra-CooverClark JV1, LLC and other project-specific entities, while previously listing the value of those interests as "Unknown."

15. The Amended Disclosure Statement does not adequately disclose:

    a. the present estimated value of each joint-venture interest;

    b. financial statements for the joint ventures;

    c. cash balances;

    d. accounts receivable and payable;

    e. work in progress;

    f. remaining contract backlog;

    g. historical and projected revenues;

    h. liabilities;

    i. historical distributions;

j. projected distributions;

k. funds presently held by the ventures;

l. distributions presently due to the Debtor;

m. material restrictions upon transfer or disposition; or

n. a reasonable estimate of the amount that could be realized from those interests in a liquidation or other disposition.

16. Coover-Clark does not contend that § 1125 invariably requires a formal appraisal of every asset. The deficiency is that creditors have not been provided sufficient information to evaluate assets that the Debtor itself identifies as its primary assets.

17. Creditors cannot reasonably determine the value of the Debtor's estate, the reliability of its liquidation analysis, or their likely recovery under competing alternatives while these material assets remain essentially unvalued.

## III. THE DISCLOSURE CONCERNING ETEGRA-COOVERCLARK JV1, LLC REMAINS INADEQUATE

18. The Debtor has asserted that it owns a 51% interest in Etegra-CooverClark JV1, LLC.

19. Coover-Clark disputes that assertion and maintains that the joint venture is owned on a 50/50 basis.

20. Neither the Amended Plan nor the Amended Disclosure Statement adequately identifies or explains this material ownership dispute.

21. Nor does the Debtor disclose the documents or other basis supporting its purported 51% ownership position, the value of the joint venture, amounts held by or due from the joint venture, or the effect the disputed ownership percentage has upon the Debtor's estate.

22. The ownership and value of this joint venture are plainly material to Coover-Clark and to creditors attempting to evaluate the Debtor's assets and the proposed Plan.

## IV. THE LIQUIDATION ANALYSIS DOES NOT PROVIDE A RELIABLE BASIS FOR THE DEBTOR'S ASSERTED ZERO RECOVERY IN CHAPTER 7

23. The Amended Disclosure Statement asserts that general unsecured creditors would receive **$0.00** in a Chapter 7 liquidation.

24. The Debtor reaches that conclusion while its joint-venture interests—the Debtor's purported "primary assets"—remain of unknown value.

25. The Debtor provides no meaningful valuation methodology, financial analysis, contract analysis, joint-venture accounting, or other information establishing that those interests would generate no value in a Chapter 7 liquidation.

26. The Debtor additionally states that it has attempted to locate a purchaser for its assets and has received no interest. The inability to locate a purchaser, without disclosure concerning

the marketing process, potential purchasers contacted, asking price, duration of marketing, financial information supplied to prospective purchasers, or offers received, does not establish that the assets have no liquidation value.

27. The Debtor's zero-recovery conclusion is particularly material because it forms the basis for the Debtor's assertion that the Amended Plan necessarily provides general unsecured creditors with more than they would receive in Chapter 7.

28. Without adequate information concerning the Debtor's material assets, creditors cannot meaningfully evaluate the best-interest comparison implicated by 11 U.S.C. § 1129(a)(7).

## V. THE AMENDED PLAN OFFERS APPROXIMATELY $60,000 TO MORE THAN $16 MILLION OF GENERAL UNSECURED CLAIMS WITHOUT ADEQUATE EXPLANATION

29. Class Five consists of approximately $16,050,469.48 of general unsecured claims.

30. The Amended Plan provides that the entire class will receive only $1,000 per month for five years on a pro-rata basis.

31. Thus, the Plan proposes aggregate payments of approximately $60,000 against more than $16 million of asserted unsecured claims.

32. The proposed recovery is substantially less than one percent.

33. Neither the Amended Plan nor the Amended Disclosure Statement adequately explains why $1,000 per month represents an appropriate or maximum distribution to unsecured creditors.

34. In particular, the Debtor does not adequately explain the treatment of:

    a. excess operating income;

    b. distributions from joint ventures;

    c. proceeds from asset sales;

    d. additional or unexpected contract revenues;

    e. recoveries from retained causes of action; or

    f. other available post-confirmation cash.

35. The Plan simply states that creditors will be paid from current and projected future income and characterizes the proposed payment as a "reasonable dividend."

36. Creditors require substantially more information before determining whether to accept such a nominal recovery.

## VI. THE AMENDED PLAN'S TREATMENT OF EXISTING EQUITY RAISES A SUBSTANTIAL ABSOLUTE-PRIORITY OBJECTION

37. Class Six consists of the Debtor's equity holders.

38. Article III states that there will be no distribution to the equity holders under the confirmed Plan.

39. Article VI, however, provides that Aditi Allady will remain an equity holder and further states that the shares of Joseph Carter, Sonnie Kishna-Sencerea, Thandava Murty, and Andrew Kishna have been "forfeited" to Aditi Allady.

40. The Plan further provides that new share certificates will be issued accordingly.

41. Thus, notwithstanding the statement that equity will receive "no distribution," the Plan expressly contemplates that an existing equity holder will retain her ownership and acquire additional ownership of the reorganized Debtor.

42. Class Five is impaired and is proposed to receive only a fraction of its allowed claims.

43. If Class Five rejects the Amended Plan, confirmation over that rejection must satisfy 11 U.S.C. § 1129(b), including the fair-and-equitable requirements applicable to a dissenting class of unsecured creditors.

44. The Amended Plan does not explain how Aditi Allady's retention and acquisition of equity complies with the absolute-priority requirements of § 1129(b)(2)(B).

45. The Debtor identifies no new-value contribution, consideration, market test, or other basis for the proposed retention and acquisition of equity.

46. Accordingly, the Debtor has not established that the Amended Plan could be confirmed over the rejection of Class Five.

## VII. THE PURPORTED FORFEITURE OF SHAREHOLDER INTERESTS IS UNSUPPORTED AND INADEQUATELY DISCLOSED

47. Article VI provides that certain existing shareholders have forfeited their shares to Aditi Allady because they allegedly failed to attend shareholder meetings, contribute to operations, or remain actively involved with the company.

48. Neither the Amended Plan nor the Amended Disclosure Statement identifies:

    a. any provision of the Debtor's certificate of incorporation authorizing such forfeiture;

    b. any bylaw authorizing forfeiture;

    c. any shareholder agreement authorizing forfeiture;

    d. any board resolution authorizing the transaction;

    e. any shareholder resolution;

    f. applicable corporate law authorizing forfeiture under the circumstances described;

    g. any judicial determination of forfeiture;

    h. the value of the shares being transferred;

i. whether consideration will be paid;

j. whether the affected shareholders consent to the transfer; or

k. whether the purported forfeiture has already occurred or will occur by virtue of confirmation.

49. The Plan therefore proposes a significant alteration of the Debtor's ownership structure without adequately explaining the factual or legal basis for doing so.

50. At minimum, this treatment requires substantially greater disclosure before creditors can evaluate who will own and control the reorganized Debtor and what value existing equity is retaining or receiving.

## VIII. THE PLAN CONTAINS MATERIAL IMPAIRMENT AND VOTING INCONSISTENCIES

51. Article III expressly identifies Class One, the SBA secured claim, as impaired.

52. Article III also expressly identifies Class Five, the general unsecured class, as impaired.

53. Article IV, however, states:

"According to the above terms of this Plan, Class 4 is impaired."

54. Article IV therefore fails to identify Classes One and Five as impaired notwithstanding the express language of Article III.

55. The inconsistency is material because impairment determines voting rights and affects the requirements of 11 U.S.C. §§ 1126 and 1129(a)(8) and (10).

56. Creditors should not be solicited on an Amended Plan that does not consistently or accurately identify which classes are impaired and entitled to vote.

## IX. THE DEBTOR HAS NOT ADEQUATELY ESTABLISHED FEASIBILITY UNDER § 1129(a)(11)

57. Section 1129(a)(11) requires the Court to determine that confirmation is not likely to be followed by liquidation or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan.

58. The Amended Plan states generally that current and projected future income will fund Plan payments.

59. The filings, however, do not adequately identify or explain:

a. existing contract backlog;

b. projected joint-venture revenues;

c. expected joint-venture distributions;

d. material assumptions underlying projected revenues;

e. anticipated operating expenses;

f. payments to Smart Infrastructure Group, LC and other insiders or affiliates;

g. management compensation;

h. working-capital requirements;

i. debt-service obligations; and

j. The source and timing of funds necessary to satisfy all administrative, priority, secured, and Plan obligations.

60. The Debtor's historical financial performance further requires a meaningful explanation of how the reorganized Debtor will achieve the results necessary to perform under the Amended Plan.

61. Conclusory statements that the projections are conservative and reasonable do not resolve these issues.

62. The Debtor therefore has not supplied adequate information concerning feasibility and, on the present record, has not established compliance with § 1129(a)(11).

## X. THE PLAN DOES NOT REQUIRE ADDITIONAL AVAILABLE FUNDS TO BE DISTRIBUTED TO GENERAL UNSECURED CREDITORS

63. Article V provides that creditors will be paid from the Debtor's current and projected future income.

64. Yet the Amended Plan establishes a fixed distribution to Class Five of only $1,000 per month.

65. Article VIII further provides only that the Debtor "reserves the right" to pay a class at a faster rate if additional monies become available.

66. Thus, the Plan does not require additional available funds to be distributed to Class Five.

67. The reorganized Debtor could potentially receive additional operating revenues, joint-venture distributions, proceeds from asset sales, or other cash while continuing to pay the approximately $16 million unsecured class only $1,000 per month.

68. The Debtor has not adequately explained how that discretionary structure provides fair and equitable treatment to impaired unsecured creditors while existing equity continues to own and control the reorganized business.

## XI. THE PURPORTED DISCHARGE OF THE DEBTOR'S PROFESSIONALS IS IMPROPER OR, AT MINIMUM, INADEQUATELY SUPPORTED

69. Article X provides that confirmation shall be deemed to discharge "the Debtor, and its professionals" from claims arising on or before the Confirmation Date.

70. The Plan provides no factual or legal basis for extending the Debtor's discharge to nondebtor professionals.

71. The Plan does not identify which professionals are intended to receive the release or discharge, the claims being released, the consideration being provided for the release, or whether affected parties consent.

72. Nor does the Plan contain a mechanism by which creditors affirmatively consent to such a release.

73. The provision should therefore be stricken, or confirmation denied unless and until the Debtor establishes a lawful basis for the requested nondebtor relief.

## XII. THE AMENDED DISCLOSURE STATEMENT CONTAINS MATERIAL INTERNAL INCONSISTENCIES

74. The Amended Disclosure Statement states in its Introduction that the Debtor filed its Chapter 11 petition on August 1, 2025.

75. Several pages later, under "Post-Petition Events," it states that the Debtor filed its voluntary petition on December 4, 2025, and expressly identifies December 4, 2025, as the "Petition Date."

76. The inconsistency remains in the First Amended Disclosure Statement despite the opportunity to correct the original disclosure.

77. The correct Petition Date is material to the preference period, avoidance analysis, post-petition transactions, administrative expenses, financial reporting, and the characterization of transactions as prepetition or postpetition.

78. The Amended Disclosure Statement also identifies both the Internal Revenue Service and the Texas Comptroller of Public Accounts as holding Claim No. 16.

79. These internal inconsistencies further undermine the reliability of the disclosure provided to creditors.

## XIII. THE AVOIDANCE-ACTION DISCLOSURE IS INADEQUATE AND INCONSISTENT WITH THE PLAN'S BROAD RESERVATION OF CLAIMS

80. The Amended Disclosure Statement states that there are presently no known voidable transfers and broadly asserts that any other payments made during the preference period were made in the ordinary course.

81. The Amended Plan, however, broadly retains jurisdiction over causes of action including preferences, fraudulent transfers, equitable subordination, and other recoveries.

82. Neither document explains the investigation undertaken to identify potential avoidance claims.

83. The filings do not identify transfers reviewed, payments to insiders or affiliates, potential defendants, amounts involved, or the basis for concluding that potentially preferential transfers are protected by an ordinary-course defense.

84. Potential avoidance claims constitute assets that may materially affect creditor recoveries.

85. This information is especially material where general unsecured creditors are proposed to receive substantially less than one percent of their claims.

## XIV. THE DISCLOSURE STATEMENT DOES NOT ADEQUATELY IDENTIFY THE SOURCE OF PLAN FUNDING

86. The Amended Plan states that payments will be made from current and projected future income.

87. The Amended Disclosure Statement states that administrative claims will be paid from the "Closing of the transaction."

88. The Amended Disclosure Statement does not adequately identify what "transaction" is being referenced.

89. It does not identify the parties to the transaction, expected closing date, anticipated proceeds, conditions to closing, or how the proceeds will be allocated.

90. This omission is particularly significant because the Amended Disclosure Statement separately states that the Debtor's efforts to locate a buyer for its assets have not generated interest.

91. The source and availability of funds necessary to consummate the Plan are fundamental to both adequate disclosure and feasibility.

## XV. THE PLAN'S PURPORTED SUPERSESSION OF THE DEBTOR'S SCHEDULES AND OTHER FILINGS IS OVERBROAD

92. Article XII, paragraph 12.5 provides that if any portion of the Plan or accompanying Disclosure Statement conflicts with the Petition, Schedules, Statement of Financial Affairs, pleadings, or correspondence, the terms of the Plan shall prevail and supersede all others.

93. That provision is overbroad.

94. The Debtor cannot remedy inaccurate asset disclosures, ownership disclosures, sworn schedules, or other material judicial filings merely by providing that the Plan automatically supersedes any inconsistent information.

95. Material inaccuracies and inconsistencies should instead be specifically identified, adequately disclosed, and, where appropriate, corrected through amended filings.

96. The blanket supersession provision further complicates creditors' ability to determine which of the Debtor's factual disclosures they may rely upon in evaluating the Amended Plan.

## XVI. THE AMENDED PLAN IS NOT PRESENTLY CONFIRMABLE

97. Based upon the foregoing, the Debtor has not demonstrated that the Amended Plan satisfies all applicable requirements of 11 U.S.C. § 1129.

98. Substantial issues remain concerning, among other things:

    a. good faith under § 1129(a)(3);

    b. the best interests of creditors under § 1129(a)(7);

    c. impairment and voting under §§ 1126 and 1129(a)(8);

    d. acceptance by an impaired class under § 1129(a)(10);

    e. feasibility under § 1129(a)(11);

    f. treatment of general unsecured creditors;

    g. retention and acquisition of property by existing equity;

    h. compliance with the fair-and-equitable and absolute-priority requirements of § 1129(b);

    i. ownership and control of the reorganized Debtor;

    j. the purported forfeiture and transfer of shareholder interests; and

    k. the purported discharge of nondebtor professionals.

99. Moreover, the Amended Disclosure Statement does not contain adequate information necessary for creditors to intelligently evaluate these issues before voting.

100. The Amended Disclosure Statement should therefore not be approved, and the Amended Plan should not be confirmed in its present form.

**WHEREFORE**, Coover-Clark Associates, Inc. respectfully requests that this Court enter an Order:

A. Sustaining Coover-Clark's Objection;

B. Denying approval of the First Amended Disclosure Statement;

C. Denying confirmation of the Amended Plan of Reorganization in its present form;

D. requiring the Debtor to file a further amended disclosure statement containing adequate information as required by 11 U.S.C. § 1125;

E. requiring the Debtor to file a further amended Plan correcting the classification, impairment, equity, release, funding, and other deficiencies identified herein;

F. requiring adequate financial and valuation information concerning the Debtor's joint ventures and other material assets;

G. requiring an adequately supported liquidation analysis and feasibility analysis;

H. requiring adequate disclosure of the legal and factual basis for the purported forfeiture and transfer of shareholder interests;

I. striking or requiring removal of the purported discharge or release of nondebtor professionals;

J. prohibiting solicitation of votes unless and until a disclosure statement containing adequate information has been approved by the Court; and

K. granting such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Dated this 25th day of August 2026

**MICHAEL A. KAUFMAN, PA**

By: *<u>/s/ Michael A. Kaufman</u>*

Michael A. Kaufman, Esquire
Florida Bar Number: 628042
1615 Forum Place, Suite 200
West Palm Beach, Florida 33401
561-478-2878 – Telephone
561-584-5555 – Fax
michael@mkaufmanpa.com
*Attorney for Coover-Clark Associates, Inc.*