**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

IN RE: CASE NO.: 25-24345 EPK
CHAPTER 11

ETEGRA, INC.,
Debtor.
_______________________________/

**RESPONSE TO COOVER-CLARK'S OBJECTION TO CONFIRMATION**

Debtor, ETEGRA, INC. ("Debtor"), by and through the undersigned attorneys, hereby files its Response to Coover-Clark's Objection to Confirmation [Dkt. No.] and states:

**Preliminary Statement**

1. Debtor and Coover-Clark were parties to a joint venture agreement. Prior to the filing of this objection, Coover-Clark filed a Motion in three parts: (a) seeking to strike the petition, (b) a turnover of funds and (c) stay relief. All three requests were denied.

2. Now Coover-Clark, who is a very minor creditor, seeks to derail confirmation of this case by bringing up matters that are hypertechnical and not related to actually what is going on in this case. In addition the Coover-Clark joint venture agreement is no longer in existenc as the project is completed.

3. Although on their face, the objections appear to be relevant to confirmation, the fact of the matter is that the objections raised are general in nature and not related to this specific case or Coover-Clark's specific claim as a Class Five General Unsecured Creditor. The objection is 100 paragraphs in length and covers items outside of the relationship Coover-Clark has with the Debtor and this case, almost as if this was written as a general objection on behalf of all creditors through mechanation. It is confounding that Coover-Clark would desire to expend such

significant attorney's fees on such a detailed objection when it is a small $60,000.00 creditor in a class with $16,000,000.00 of claims. No other of the larger creditors raised these objections.

4. Despite the foregoing, the Debtor will review each objection and explain to this Court why each objection should be overruled.

**Valuation and Information Concerning the Joint Venture Agreements**

5. Coover-Clark takes issue with the Debtor's self-valuation of the assets, namely the joint venture projects, and takes the position that adequate information has not been provided concerning the assets.

6. In a business reorganization, a value of an asset is what a willing buyer is willing to pay for the asset and what a willing seller is willing to sell an asset for. In this case, both pre-petition and post-petition, the Debtor sought to sell either the Debtor as a going concern or to sell the joint-venture agreements. The Debtor operates in a very unique market and it was not able to generate any interest. For this reason, the Debtor has valued the joint-venture agreements as "unknown."

7. The U.S. Small Business Administration is the largest, and only, secured creditor in this case. In its Proof of Claim, the U.S. Small Business Administration listed its secured claim at $436,230.97 and its unsecured claim at $1,570,767.15. On Schedule A/B, the Debtor self-valued its assets at $436,230.97. In other words, the largest and only secured creditor accepted the Debtor's valuation of the assets. In fact, in order for valuation of assets to be as important of an issue as Coover-Clark maintains that it is, the assets would need to be worth at least more than the SBA's claim of $2,006,998.12, which, in this case, it's clear that they are not. The Monthly Operating Reports clearly show that the income derived by the Debtor from the joint venture projects is not significant enough to warrant such a high valuation. In other words, from an

academic standpoint, Coover-Clarks arguments make sense, but practically, due to the circumstances of this case, they do not and they must fail.

8. In addition, since the SBA is such a large secured creditor and, frankly, the only secured creditor, this argument properly belongs to the SBA, not Coover-Clark.

9. Coover-Clark details a very specific list of what it believes is the proper mechanism to value joint ventures. Coover-Clark does not provide a citation to this purported mechanism. Coover-Clark also does not suggest it or its counsel are expert in joint venture valuation. It is baffling how and where Coover-Clark determine this exhaustive list to be a mechanism to value a joint venture projection.

10. In paragraph 15, Coover-Clark gives a detailed list of items it believes needs to be disclosed in a disclosure statement. Upon review of the items listed by Coover-Clark, these items are proprietary trade secret information veiled as a requirement for adequate information. The Debtor should not and will not disclose this information to a creditor.

11. The Monthly Operating Reports clearly should that the current projects are not generating revenue significant enough to generate more than what the Debtor has proposed in the plan.

**The Liquidation Analysis**

12. A liquidation analysis is designed to show what it is anticipated creditors would receive in a hypothetical liquidation. Coover-Clark takes the position that the Debtor has not provided a meaningful explanation why the assets are valued as they are.

13. To this point, the Debtor reiterates its arguments. In order for there to be any recovery to unsecured creditors, the assets would need to be valued at least to the value of the SBA's secured claim plus administrative claims.

14. The Monthly Operating Reports show that this Debtor has been breaking even, some months higher and some months lower, during this case. The Notice of Filing New Value Contribution by Aditi Allady is evidence that the Debtor's principal has had to personally fund payroll during the pendency of this case. The reality of the situation is this: if Coover-Clark had its way and this case was converted to a Chapter 7, the only party who may benefit is the SBA.

**<u>Feasibility and Adequacy of the Proposal of to the Unsecured Creditors.</u>**

15. Coover-Clark's claim represents 1% of the Unsecured Creditor Class.

16. The Debtor's proposal to the unsecured creditors is based on the projections which were prepared using historical data.

17. During this case on several occasions the principal funded payroll ($202,187.87 ). Once the case is confirmed, the Debtor will no longer be paying a monthly escrow payment toward administrative expenses of $5,000.00 per month, which will free up monthly net income to fund the plan. The math is simple. The Debtor can make the payments as proposed. On the one hand, Coover-Clark appears to maintain the payments are too low, yet on the other hand, Coover-Clark appears to want more monies to go to the unsecured class. These arguments are inconsistent.

**<u>Issue Concerning the Absolute Priority Rule and Forefieture of Shares</u>**

18. As previously stated, the largest shareholder has contributed new value to retain her shares. Considering the facts detailed above concerning an inability to sell the Debtor as a going concern or to sell the assets, it is quite fair to conclude that the value contributed by the largest shareholder is at least or more than the value of her shares. The absolute priority rule is met.

19. The argument concerning forfeiture is one that does not relate to Coover-Clark's claim and does not change the outcome of the plan in this unique situation. The second largest shareholder is Andrew Kishna and the Debtor and Andrew Kishna are working through their issues.

20. The fact of the matter is that the question of whether the remaining shareholders participated in management pre-petition, have paid new value post-petition and whether they need to pay new value post-petition is an issue between the Debtor and those shareholders. Coover-Clark is not one of those shareholders. The Debtor's position concerning cancellation of those shares is not in any way related to Coover-Clark's claim.

**Issues with regard to Ownership of this Joint Venture**

21. Coover-Clark brought this issue up in its Motion for Turnover filed in the beginning of this case and it was denied by the Court. Whether the Debtor/Coover-Clark joint venture arrangement was 51/49 or 50/50 is not an issue for confirmation. This is an issue that can and should be addressed outside of the bankruptcy context.

22. The K-1s for this joint venture were prepared by a CPA and filed with the IRS. The K-1s indicate that the Debtor owns 51%. Accordingly, the Schedules match the K-1. If Coover-Clark believes the arrangement is different than what was stated on the K-1, the proper procedure is amendment of the K-1, not a striking of the bankruptcy petition, There are procedures to address that outside of this Court.

**Voting Inconsistencies**

23. The Debtor does not dispute that Article IV says what it says. This is because the Plan was amended to add a new Class Four, which moved the unsecured class from Class Four to Class Five. Given that there were many ballots filed in this case, clearly there was no confusion

by the unsecured class on its entitlement to vote. In its ballot tabulation, the Debtor was sure to place the unsecured creditors in Class Five. There are no inconsistencies.

**Conclusion**

24. The reality of this situation is that the Debtor has the appropriate ballots to confirm this Plan. Coover-Clark filed this objection solely to derail this case because its Motion for Turnover was denied. Coover-Clark is a small and insignificant creditor given the large creditor pool. Coover-Clark will never receive the full amount of its claim unless one of two things happen, that never will based on the numbers. First, the Debtor is able to sell the business for the amount of the claims, to wit: $16,000,000.00. This will not happen because the Debtor has not been able to sell at all. Alternatively, the Debtor can pay all secured and unsecured claims in full, which the Monthly Operating Reports clearly show it cannot.

25. Based on the foregoing, the Objection should be overruled, the Disclosure Statement approved and the Plan be confirmed.

WHEREFORE, the Debtor in Possession, ETEGRA, INC., respectfully requests that this Honorable Court deny this Objection in its entirety and for such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by CM/ECF to interested parties this 9th day of March, 2026.

KELLEY KAPLAN DELANEY & ELLER, PLLC
Attorney for Debtor
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, Florida 33401
Tel: (561) 491-1200
Fax :(561) 684-3773

BY: __/s/ Dana Kaplan___
DANA KAPLAN, ESQUIRE

Florida Bar 44315

**Mailing Information for Case 25-24345-EPK**
**Electronic Mail Notice List**
The following is the list of parties who are currently on the list to receive email notice/service for this case.

- Bryant H Dunivan bryant@dunivanlaw.com, bryant-dunivan 8470@ecf.pacerpro.com;eservice@theconsumerprotectionattorney.com
- Heidi A Feinman Heidi.A.Feinman@usdoj.gov
- Dana L Kaplan dana@kelleylawoffice.com, bankruptcy@kelleylawoffice.com;scott@kelleylawoffice.com;sarah@kelleylawoffice.com;laurie@kelleylawoffice.com
- Michael A Kaufman eservice@mkaufmanpa.com, makpa@ecf.courtdrive.com
- Craig I Kelley craig@kelleylawoffice.com, bankruptcy@kelleylawoffice.com;scott@kelleylawoffice.com;kelleycr75945@notify.bestcase.com
- Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov
- Christian Somodevilla Christian.Somodevilla@usdoj.gov, shannon.patterson@usdoj.gov;bridgett.moore@usdoj.gov
  Manual Notice List

**The following is the list of parties who are not on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.**

Christopher S. Murphy
Texas Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548

Joseph A. Ott
Ott Law Firm, LLC
75 W. Lockwood Avenue
Webster Groves, MI 63119