**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

IN RE: CASE NO.: 25-24345 EPK

ETEGRA, INC., CHAPTER 11

Debtor.
_____________________________________________/

# AMENDED DISCLOSURE STATEMENT FOR ETEGRA, INC.

**KELLEY KAPLAN & ELLER, PLLC**
Attorneys for Debtor in Possession
1555 Palm Beach Lakes Blvd.
Suite 1000
West Palm Beach, Florida 33401
Telephone: (561) 491-1200
Facsimile: (561) 684-3773
bankruptcy@kelleylawoffice.com

By: /s/*Dana Kaplan*
Dana Kaplan, Esquire
Florida Bar No.: 44315

**TABLE OF CONTENTS**

PAGE

INTRODUCTION .......... 3

I. DEFINITIONS .......... 5

II. PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION .......... 5

III. POST-PETITION EVENTS .......... 5

IV. FINANCIAL INFORMATION .......... 7

V. VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS .......... 7

VI. OBJECTIONS TO CLAIMS .......... 7

VII. MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS .......... 8

VIII. CLAIMS AND THEIR TREATMENT UNDER THE PLAN: .......... 8

IX. POST-CONFIRMATION CONTROL OF the Debtor .......... 8

X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 10

XI. REORGANIZATION ANALYSIS .......... 11

XII. CONFIRMATION REQUEST .......... 12

XIII. FEASIBILITY AND BEST INTEREST TEST .......... 12

XIV. RISK ANALYSIS .......... 12

XV. MISCELLANEOUS PROVISIONS .......... 12

XVI. CONCLUSION .......... 14

EXHIBITS:

EXHIBIT "A" List of Creditors
EXHIBIT "B" Reorganization Analysis
EXHIBIT "C" Schedule "A/B" of Petition
EXHIBIT "D" Monthly DIP Reports Summaries
EXHIBIT "E" Projections

Debtor in Possession, **ETEGRA, INC.** (hereinafter "Debtor") submits its Disclosure Statement (hereinafter referred to as "Disclosure Statement") to its Creditors and other parties in interest. A hearing on confirmation of the attached Plan is scheduled before the Court on __________________. The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.

**INTRODUCTION**

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan of Reorganization by 11 U.S.C. Section 1125. The purpose is to disclose information deemed to be material, important, and necessary for the Creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan of Reorganization (hereinafter referred to as "the Plan"). This Disclosure Statement should be read in conjunction with the accompanying Plan of Reorganization. The Plan is a legally binding document once it is approved by the Court and should be read in its entirety. Accordingly, creditors may wish to consult with their own attorney to understand the Plan more fully.

On **August 1, 2025**, the Debtor in Possession, **ETEGRA, INC.** filed a voluntary Petition for Reorganization under Chapter 11 in the United States Bankruptcy Code, 11 U.S.C., Section 101 *et seq*., ("the Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). **ETEGRA, INC.** has continued to operate its personal and business affairs as the Debtor in Possession pursuant to Section 1108 of the Bankruptcy Code.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WAS PREPARED BY the Debtor, UNLESS SPECIFICALLY STATED TO BE

FROM OTHER SOURCES. NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING the Debtor, PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS OR VALUE OF THEIR PROPERTY, IS AUTHORIZED OR WARRANTED BY the Debtor. THE READER SHOULD NOT RELY ON ANY ORAL OR OUTSIDE REPRESENTATION BY ANY AGENT OF the Debtor IN DECIDING TO VOTE FOR OR AGAINST THE PLAN. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH OTHER ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR the Debtor, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

Projections or results of future operations are based on Debtor's best estimates in light of current market conditions, past experience, analysis of general economic conditions, and other estimates which will bear on the results.

You are urged to carefully read the contents of this statement before making your decision to accept or reject the Plan. Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist. The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court. Your ballot must be filed on or before ____________________, in order to be considered and counted. As a Creditor, your vote is very important. *In order for the Plan to be accepted, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and*

*more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.* You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished to you. Please be sure to properly complete the form and legibly identify the name of the Claimant or interest holder. You are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting Creditors consistent with the limitations set forth in the Bankruptcy Code, as further discussed below.

## I. DEFINITIONS

The following phrases, as used hereinafter, shall have the following meanings:

All definitions in the Plan of Reorganization are incorporated herein.

| | |
|---|---|
| Court - | Shall mean the United States Bankruptcy Court or the United States District Court, whichever is appropriate, implementing the provisions of the Bankruptcy Code in these proceedings. |
| Creditor - | Shall mean the holder of an Allowed Claim. |
| Debtor's Property - | Shall mean all of the Debtor's property, as defined in Section 541 of the Bankruptcy Code. |
| Plan - | Shall mean the Chapter 11 Plan and any other subsequent amendments or modifications. |

## II. PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION

The Debtor, a corporation organized under the laws of the State of Delaware, is a full service, 8(a) DBE/MBE architect-engineer (A-E) firm. Its primary services are architecture, engineering, and construction management for the Department of Defense and numerous Federal Agencies. The Debtor also provides civil, mechanical, electrical, plumbing and fire protection engineering to public and private clients.

On or about June 18, 2021, the Debtor, on the one hand, and Vinod Reddi and Aditi Allady, on the other, entered into an Investment Operating Agreement. On this same date, the

Debtor issued Aditi Allady with a "Warrant" for certain Etegra Stock shares, subject to the terms and conditions set forth in both the Investment Agreement and the Warrant. After the investment by Aditi, the Debtor and Smart Infrastructure Group, LC ("SIG") entered into a Services Agreement whereby SIG provides all finance, accounting, administrative, marketing, information technology, human resources and supply chain management services to the Debtor. Services provided by the Debtor are undertaken through various joint venture agreements. The Debtor's primary assets are the joint venture agreements operated through various limited liability companies owned by the Debtor.

After SIG took over the management of the Debtor, it became apparent that the Debtor had been suffering losses which the prior board members and managers were funding through loans. Pre-petition, issues arose between the Debtor and Andrew Krishna, a shareholder and board member and Andrew Krishna filed suit against the Debtor, amongst others, pre-petition.

The Debtor decided to file this case to restructure the debt and use the time after the case was filed to determine whether reorganization was a feasible option.

## III. POST-PETITION EVENTS

On December 4, 2025 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

The Debtor had physical offices in Dallas and St. Louis but closed those offices to reduce overhead expenses. Those employees began working remotely. In addition, the Debtor has been working to stabilize expenses in order to reorganize its financial affairs. The litigation filed by Andrew Krishna has been stayed as to the Debtor.

Achyut Kumar Allady, the CEO of SIG, has been working to locate a buyer for the assets of the Debtor through his contacts in this very niche industry. As of the filing of this Plan, there has not been any interest by anyone to purchase the assets of the Debtor, but the Debtor believes

that the projections show an ability to reorganize.

## IV. FINANCIAL INFORMATION

The source of the financial information for this Disclosure Statement and accompanying Plan is from reports and financial statements of the Debtor, Debtor in Possession Reports, the Debtor and the Debtor's financial professionals. The aforementioned information has been compiled through the present.

## V. VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS

There are currently no known or existing voidable transfers that the Debtor has been a party to within the year prior to Bankruptcy. Any other payments made during the preference period were made in the ordinary course of the Debtor's operations.

## VI. OBJECTIONS TO CLAIMS

Pursuant to the Plan, the Debtor may object to any scheduled claim or Proof of Claim filed against the Debtor. Such an objection shall preclude the consideration of any claim as "allowed" for the purposes of timely distribution in accordance with the Plan. Any objections by the Debtor have been, or will be, filed with the Bankruptcy Court under separate pleading.

The Debtor is presently reviewing Proofs of Claims that have been filed to determine the propriety of filing claims objections and have determined that some objections will be filed during the Disclosure Statement approval and/or Plan confirmation process. A list of all creditors and claims, including claims that are indicated as disputed, is attached hereto and made a part hereof as **Exhibit "A"**. The List of Creditors attached as **Exhibit "A"** sets forth the nature and grounds for any disputed claims. The timing of the Objections will not harm or prejudice any interested parties, nor will it delay the administration of this case. In the event that a creditor files a ballot with an objection pending, that creditor will need approval of this Court to have its ballot be tabulated.

## VII. MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS

The Debtor believes that the Plan of Reorganization provides the best value for the creditors' claims and is in their best interest. Attached hereto as **Exhibit "A"** is a table showing the claims against the Debtor in each classification. Attached hereto as **Exhibit "E"** are cash flow Projections setting forth a projected budget of the Debtor for the five (5) year term of the Plan.

The Debtor believes that the risk of non-payment of the percentage distribution to the unsecured creditors in the Chapter 11 is greatly outweighed by the more substantial risk of non-payment should this Bankruptcy be converted to a Chapter 7 liquidation, wherein the unsecured creditors would receive a distribution of 0%.

## VIII. CLAIMS AND THEIR TREATMENT UNDER THE PLAN:

### A. Administrative Claims:

The administrative claimants include the Debtor's attorney and the Office of the U.S. Trustee. Payment of the administrative claims for the Debtor's counsel is subject to set off for pre- and post-petition retainers, as well as approval by the Court of very detailed fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on or before confirmation. All allowed Administrative Claims of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid only upon approval of this Court after proper Applications are filed and an Order of this Court is entered. The Administrative Claims shall be paid from the Closing of the transaction.

### B. Classification Of Other Creditor's Claims

1. **Class One (U.S. Small Business Association):** The secured claim of the U.S. Small Business Association (Claim #11) in the amount of $436,230.97 is secured by a blanket lien on the Debtor's personal property assets. The Debtor shall make regular monthly payments

on this obligation in the amount of $7,980.51 at the contract rate of interest of 3.75%. The claim is impaired.

2. **<u>Class Two (First Insurance Funding)</u>:** The secured claim of First Insurance Funding (Claim #10) in the amount of $9,785.70 is for an insurance premium finance agreement and is secured by a first priority lien on and security interest in the financed policies (defined within the claim). The Debtor shall continue to make regular payments pursuant to the terms of the loan documents. No distribution shall be made under this Plan. The claim is unimpaired.

3. **<u>Class Three (Department of the Treasury – Internal Revenue Service)</u>**: The Department of the Treasury – Internal Revenue Service filed a claim in the amount of $1,460,464.10 (Claim #16) for unpaid FICA and FUTA taxes for returns that the IRS indicates have not been filed, but the Debtor believes all returns have been timely filed. In the event it is determined between the parties that the claim was not paid, the Debtor shall amend the plan accordingly to treat the claim in conformance with 11 U.S.C. 1129(a)(9)(C). This claim is unimpaired.

4. **<u>Class Four (Texas Comptroller of Public Accounts)</u>**: The Texas Comptroller of Public Accounts filed a priority claim in the amount of $5,246.91 (Claim #16) for franchise taxes. The Debtor shall pay this claim over twelve (12) months at the statutory rate of interest $455.81 per month. This claim is impaired.

5. **<u>Class Five (General Unsecured Claims)</u>**: The General Unsecured claims include all other allowed claims of Unsecured Creditors of the Debtor, subject to any Objections that are filed and sustained by the Court. The general unsecured claims prior to the filing of any objections total the amount of $16,050,469.48, which will be paid over the five (5) year term of the Plan at the rate of $1,000.00 per month on a pro-rata basis. The payments will commence on

the Effective Date of the Plan. The dividend to this class of creditors is subject to change upon the determination of objections to claims. To the extent that the Debtor is successful or unsuccessful in any or all of the proposed Objections, then the dividend and distribution to each individual Class of General Unsecured Claims then the dividend and distribution to each individual creditor will be adjusted accordingly. These claims are impaired.

6. **Class Six (Equity)**: There shall be no distribution to the equity holders of ETEGRA, INC. under the confirmed Plan and no dividends to this class of claimants.

## IX. POST-CONFIRMATION CONTROL OF THE DEBTOR

9.1 The Debtor will continue to operate and be managed by Smart Infrastructure Group, LC. The CEO is Achyut Kumar Allady. At the time of the filing of the case, the shareholders were (i) Aditi Allady (80,600 shares), Joseph Carter (400 shares), Sonnie Kishna-Sencerea (300 shares), Thandava Murty (3,000 shares) and Andrew Kishna (15,000). For several years (both pre-petition and post-petition), Joseph Carter, Sonnie Kishna-Sencerea, Thandava Murty and Andrew Kishna have not attended shareholder meetings, contributed to the Debtor's operations, whether monetarily or nonmonetarily, or otherwise remained actively involved in the company. Accordingly, through their actions and failure to be involved in the Debtor's operations, it is deemed that they have forfeited their shares to the active shareholder, Aditi Allady. New share certificates shall be issued accordingly.

## X. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 Any and all Executory Contracts and unexpired leases of the Debtor not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending applications to assume, shall be deemed rejected. Contracts and Leases will be assumed on the Effective Date.

10.2 Any claim for a rejected contract or lease shall be paid as a General Unsecured

Claim by agreement, or upon determination by the Court, to the extent that such claims are allowed.

10.3 The Debtor intends to assume the following leases and contracts:

None.

## XI. LIQUIDATION ANALYSIS

11.1 As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case, and subsequent liquidation of the Debtor's non-exempt assets by a duly appointed or elected Trustee. In the event of a liquidation under Chapter 7, the following is likely to occur: (a) an additional tier of administrative expenses entitled to priority over general Unsecured Claims under Section 507(a)(1) of the Bankruptcy Code would be incurred. Such administrative expenses would include Trustee's commissions and fees to the Trustee's accountant, attorney's fees and other professionals likely to be retained for the purposes of liquidating the assets of the Debtor; and (b) substantially less than market value will be realized for the Debtor's property, as set forth in Schedule B of the Bankruptcy Petition filed in this case, a copy of which is attached hereto and made a part hereof as Composite **Exhibit "C"**. A Liquidation Analysis is attached hereto as **Exhibit "B"**.

Predicated upon the foregoing, the Debtor believes that the Creditors will receive more under a Chapter 11 Plan than they would under a Chapter 7 proceeding. As evidenced by the Liquidation Analysis attached hereto as **Exhibit "B"**, in the hypothetical conversion to a Chapter 7, the unsecured creditors would receive $0.00 as all assets would be first used to satisfy the claims of the secured lender.

The Court has previously set February 12, 2026, in this case as the claims bar date. All indebtedness scheduled by the Debtor as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and timely filed Proof of Claim shall be deemed an

allowed claim unless the same is objected to, and the objection thereto is sustained by the Court.

## XII. CONFIRMATION REQUEST

12.1 In the event that impaired classes reject the Plan of Reorganization, the Debtor reserves the right to seek confirmation of the Plan pursuant to 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class. Furthermore, for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

## XIII. FEASIBILITY AND BEST INTEREST TEST

13.1 The Debtor submits that the Plan is fair and reasonable in its treatment of the respective classes of claims in this case, and that it is in the best interests of all affected parties to approve the Plans treatment of the classes of claims.

**CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE FULL TEXT OF THE PLAN OF REORGANIZATION, AND ANY AMENDMENTS OR MODIFICATIONS THERETO, PRIOR TO VOTING ON WHETHER TO ACCEPT OR REJECT THE PLAN.**

## XIV. RISK ANALYSIS

As with any investment, there are risks associated with all Plans of Reorganization, and this matter is no exception. A possible risk includes the possibility of a loss or decrease of employment income. As with any similar situation, there is always the risk that the Debtor may not perform as forecasted, but the Debtor firmly believes that the projections for its future income and expenses are conservative and reasonable.

## XV. MISCELLANEOUS PROVISIONS

A. Notwithstanding any other provisions of the Plan of Reorganization, and any amendments or modifications thereto, any claim which is scheduled as disputed, contingent, or unliquidated, or which is objected to in whole or in part on or before the date for distribution on account of such claim, shall not be paid in accordance with the provisions of the Plan of Reorganization until such claim has become Allowed Claim by a final Order. If allowed, the Claim shall be paid on the same terms as if there has been no dispute.

B. At any time before the confirmation date, the Debtor may amend the Plan so long as the Plan as amended meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. After the Debtor files an amendment with the Bankruptcy Court, the Plan, as amended, shall become the final Plan of Reorganization.

C. At any time after the confirmation date, and before substantial confirmation of the Plan, and any amendments or modifications thereto, the Debtor or the reorganized Debtor may modify the Plan so long as the Plan, as modified, meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become the final Plan of Reorganization subject to and upon approval by the Court.

D. After the confirmation date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the final Plan of Reorganization or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the final Plan of Reorganization.

E. Except as otherwise provided in the accompanying Plan, confirmation of the Plan shall be deemed to have discharged the Debtor pursuant to Section 1141(d)(1) of the Code, from any claim included in this proceeding that arose on or prior to the Confirmation Date, and any

claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan. The payments to be made pursuant to This Plan by the Debtor that have provided post-petition new value contributions and will continue to do so as set forth within the Plan and as necessary to fund their expenses, which shall be in full settlement and satisfaction of all claims against the Debtor's Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge after all actions required to be taken on or before the Effective Date have been done, or as otherwise provided in § 1141(d)(5) of the Code. If the Debtor is unable to meet the requirements of § 1141(d)(5) then it will seek to administratively close the case post-confirmation.

F. Quarterly Trustee Fees and Post Confirmation Reporting - The Debtor is current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtor shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until This case is closed by the entry of a final decree on the confirmed Plan. The Debtor shall file all required Monthly Operating Reports Post-confirmation and Post-Confirmation quarterly reports upon the effective Date through closure of the case.

## XVI. CONCLUSION

Under the Debtor's Plan of Reorganization, and any amendments or modifications thereto, all claimants of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants and interest holders equitable treatment. Accordingly, the Debtor recommends that all claimants vote to **Accept** the Plan of Reorganization.

*THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Disclosure Statement has been executed this 16th day of July 2026.

**ETEGRA, INC.**
DEBTOR IN POSSESSION

By: **/s/** Aditi Allady
Aditi Allady
Etegra, Inc.
Majority Shareholder

KELLEY KAPLAN & ELLER, PLLC
Attorneys for Debtor
1665 Palm Beach Lakes Blvd, Suite 1000
West Palm Beach, FL 33401
Tel. No. (561) 491-1200
Fax No. (561) 684-3773
bankruptcy@kelleylawoffice.com

By: /s/ *Dana Kaplan*
Dana Kaplan, Esquire
Florida Bar No.: 44315